WINDOW ROCK DISTRICT COURT

May 13, 1983

No. WR-CV-153-83

MARSHALL TOME, Plaintiff, v.

THE NAVAJO NATION, et.al., Defendants.

Honorable Tom Tso, Judge presiding.

This case is in reality a dispute between two Navajo government administrations over a valuable item of property, the Navajo Times newspaper and publishing business. The dispute revolves around arguments over the legality of the sale of the Times to Marshall Tome under the administration of the Honorable Peter MacDonald and the legality of the cancellation of that sale under the administration of the Honorable Peterson Zah. The Advisory Committee which served under Chairman MacDonald approved the sale of the Times to Marshall Tome, the former Director of Division of Community Development, and Chairman MacDonald signed a sales agreement to complete the transaction. Mr. Tome has now come before the court to ask its protection because of a subsequent enactment of the current Advisory Committee voiding the legislative action of its predecessor.

The basic legal question presented to the court is whether Mr. Tome has a valid and binding contract with the Navajo Nation. That basic question can be reached only through an examination of the legality of the legislative action approving the sale and perhaps an examination of the legality of later legislative action invalidating the prior approval of the contract.

The court does not decide these questions now, because the only question which has been presented to it is whether the court should block any action to sell the Times pending the resolution of these major questions. Mr. Tome asks for a temporary restraining order to keep the Times from being sold to anyone but himself, and this court is called upon to inventory and balance the comparative hardships, potential losses, injury and benefit to Tome and the Navajo Nation should an order be entered or denied.

The court is bothered by the political implications of the case before it. The political conduct of one governmental administration is being matched against the political conduct of a subsequent administration. The courts normally steer clear of such disputes, but this court will hear this one because of the facts that an individual is claiming injury to his property rights and an impairment of a contract, and the property of the Navajo People is the asset being sought by the parties. As will be detailed below, we are dealing with the property of the Navajo People, an asset which all Navajo governmental administrations must treat with the greatest respect and care, and this court has a duty imposed by Navajo common law to protect that property.

The facts essential to a ruling on an application for a temporary restraining order are fairly plain. On January 5, 1983 the Advisory Committee enacted Resolution No. ACJA-13-83 approving the sale of the Times to Marshall Tome and that resolution not only authorized but directed Chairman Peter MacDonald to sign an agreement of sale with Tome. The agreement was reviewed and approved by the committee. It provides for the sale of the Times, including its equipment, fixtures, inventory, name, subscriptions and other business aspects. The sales price was $28,000.00, payable in 60 days. An appraisal was to be made by a qualified appraiser hired by the Commercial Industrial Development and Management Department of the Division of Economic Development, and if that appraisal showed a value of over $28,000.00, Tome would have been required to pay the difference between the appraised value and the purchase price within the 70 day period. The agreement provided that the sale was to be effective upon its approval by the Advisory Committee.

The agreement was signed on January 7, 1983, two days after the Advisory Committee resolution.

There is an annotation at the top of Resolution ACJA-13-83 that it is a "Class "B" Resolution, Area Approval Required." There was some testimony as to the effect of resolutions which carry the "Class A" designation (approval by the Commissioner of Indian Affairs or the Secretary of the Interior - the court assumes the Assistant Secretary now assumes this function), the "Class B" label (approval by the Navajo Area Director, Bureau of Indian Affairs) or the "Class C" mark (no approval of the United States Government needed). The court is not satisfied at this point as about the legal and policy foundations for these classifications and leaves them for more complete argument and discussion later. If the argument is that Bureau of Indian Affairs approval at the area office level was required to validate this sale, then the court must know the legal foundation for it and the legal interests to be served by such a requirement. It may well be that the Navajo government would be bound by its own classification of the sales resolution and by its own legislation action, but the determination of whether the plaintiff has vested property rights may hinge on that legal determination. The court finds that the Navajo Area Director, BIA, has not given approval to the resolution or the sale.

THE NAVAJO COMMON LAW

This court has jurisdiction over this matter. It has jurisdiction over the defendants due to its general jurisdiction, and that jurisdiction is not stayed by the Navajo Nation Sovereign Immunity Act because conduct which may have exceeded the scope of the authority of officers and legislative bodies is in question. The insurance coverage jurisdictional question cannot be decided at this point. While it is true that the liability of the Navajo Nation does hinge upon insurance coverage, (1) that is a question of damages and not the kind of relief requested here; (2) it may be possible for a plaintiff to obtain a judgment which is executory and which my later be satisfied by legislative appropriation or otherwise; and (3) there is not enough factual evidence before the court on that question to provide a basis for ruling on the point.

Navajo Common Law is a body of law which is fully binding on

this court and on the parties. 7 NTC Sec. 204. It consists of the customs, traditions and usages of the Navajo People. The court can "find" the Navajo common law through its own knowledge of it, since it is a matter of common knowledge, or through proof of it. The court takes judicial notice of the following legal principles:

There are valuable and tangible assets which produce wealth. They provide food, income and the support of the Navajo People. The most valuable tangible asset of the Navajo Nation is its land, without which the Navajo Nation would exist and without which the Navajo People would be caused to disperse like the Jewish People following the fall of Jerusalem. Land is basic to the survival of the Navajo People.

While it is said that land belongs to the clans, more accurately it may be said that the land belongs to those who live on it and depend upon it for their survival. When we speak of the Navajo Nation as a whole, its lands and assets belong to those who use it and who depend upon it for survival - the Navajo People. Therefore, as a matter of Navajo common law, this court finds that the assets in question are the property of the Navajo People and not particular invididuals or government administrations. Since it is the property of the Navajo People, this court is required to assume the jurisdiction of a guardian or custodian over it to determine whether it is being managed in the best interests of the Navajo People. The courts derive their authority from the inherent sovereignty of the Navajo People, and they are affirmatively required to exercise that authority to further that sovereignty by protecting its land and property base.

Under Navajo tradition this is the time of year that the Navajo People would dissolve their bodies of men at war and return to productive and peaceful activities. This court is required to act as a peace leader to bring this land to undisputed and peaceful use.

Therefore the court has jurisdiction in this case and the authority to enter all appropriate orders to protect the property of the Navajo People.

## THE STANDARD OF REVIEW IN THIS CASE

This court has already declared the law of temporary restraining orders in a situation very much like the one before it now. In Damon v. MacDonald this court noted that the temporary restraining order is a drastic remedy which will not usually be granted without a very strong showing there will be an injury which cannot later be healed. No. WR-CV-01-83, p. 4 (Ruling on Application for a Temporary Restraining Order, Jan. 21, 1983). Any party asking for a temporary restraining order must show the court;

1. There will be immediate and irreparable injury if an Order is not granted;

2. There is a probability the applicant will be successful on the merits of the suit (i.e. he or she will win in the end); and

3. There is a harm to the applicant which outweighs any harm to the opposing side and to the public. Id. As was noted earlier in this opinion, this court is required to review all the possible injuries and evil affects which the granting or denial of an order will cause and then require or stop action as the facts mandate.

## IMMEDIATE AND IRREPARABLE INJURY

The balance of injury shows that the public would be injured most heavily if an order is granted. The documents leading up to the contract and the agreement itself show a minimum purchase price of $28,000 and the court notes that the upper limit of that price is $40,000. In evidence is a memorandum from the Director of the Navajo Property Control & Stores Department showing an acquisition value of the equipment of the times to be $129,901. (Note: That is only the equipment value and there are other items which were included in the agreement). The court notes Mr. Tome's allegation that should the agreement not be followed he will be injured in the sum of $4,872.000. The court does not know the period of time such damages would accrue, but certainly the question is weighed as to how much the Times is really worth. On the basis of the appraisal of equipment alone, the Navajo People would lose $101,901. The purchase agreement itself calls for the payment of the difference between the agreed purchase price and appraised value, and the court finds that there is a sufficient potential of significant harm to the Navajo People that the doubt should be resolved in their favor.

The court is not satisfied that the injury is immediate, given the need under the subsequent Advisory Committee resolution to take certain steps prior to a sale, and the court is not satisfied that the injury is irreparable. It is true that the Times is a unique asset which could be the subject of a court order for the specific performance of a valid contract for sale, and the court will protect that option in this order. However the plaintiff does also have the possibility of a damage judgment which the court may or may not find to be viable. These things need to be developed.

## SUCCESS ON THE MERITS

At this point there is no assurance that either side will be successful on the merits. As was noted above, this is a case with political overtones to it and one which will most likely require the court to use fiduciary standards to evaluate. There are many legal questions to be resolved and the merits of this case are by no means apparent at this point. Some of them may be:

1. Whether the new administration is bound by the actions of the prior administration by some sort of succession doctrine;

2. Whether the plaintiff has acquired a vested property interest in fact which is protected by principles of due process and prohibitions against the impairment of contract;

3. Whether the conduct of the prior Advisory Committee was in full compliance with Navajo law or was ultra vires;

4. Whether Bureau of Indian Affairs sanction of the transaction is required or was had;

5. Whether there are or were any problems with conflicts of interest or fudiciary standards;

6. Whether the contract was unconscionable;

7. Whether the subsequent Advisory Committee action can be upheld under the doctrne that a legislature can repeal a prior enactment at any time;

8.  Whether the plaintiff has an adequate remedy at law; and

9.  Whether the contract was valid and proper or it should be declared void as being violative of public policy and the Navajo common law described above.

## RULING ON THIS APPLICATION

A temporary restraining order will be denied. The equities weight in favor of the Navajo People and a full hearing on the issues raised and more will be required before this court is in a position to identify who has proper interests to be protected.

However, the rights of the plaintiff must not be ignored. He is a businessman of standing with years of business experience. Businessmen enter into agreements with the expectations of profit, and they invest money, time and effort in order to obtain an agreement. What Mr. Tome is asking for is the benefit of his bargain. If it is an enforcible bargain, he should have it. He says that if the agreement is not enforced quickly he will lose the benefit of his bargain and be injured in a substantial way. The court agrees with the urgency of the matter and also finds that the public needs a quick determination of this case.

Therefore, it is hereby ORDERED that:

1.  The plaintiff's application for a temporary restraining order is denied;

2.  Within five (5) days of the date of this order, counsel for the parties shall make their reports to the court on (a) any discovery that needs to be done and how quickly it can be completed, (b) what pretrial proceedings will be necessary to prepare this case for an immediate trial, and (c) the date on which they can go forward with a full trial on the merits. The trial must take place no later than 60 days of the date of this order, and the court prefers to go forward no later than 30 days of the date of this order.

3.  The plaintiff may, if necessary, make a further application for extraordinary relief in accordance with the standards of this opinion and order.